(81 South. 601)

No. 23172.

McKERNAN v. NEW ORLEANS RY. & LIGHT CO.

(March 3, 1919. Rehearing Denied May 5, 1919.)

*(Syllabus by Editorial Staff.)*

CARRIERS ⬤⟿333(10)—INJURIES TO PASSENGER LEAVING CAR — CROSSING OTHER TRACK — CONTRIBUTORY NEGLIGENCE.

Where plaintiff left the street car on which she had been riding, and started across the street in a hurry because it was raining, and she wished to deliver a message, and so did not take time to go to the regular crossing, and in holding her umbrella she obstructed her vision and did not see an approaching street car, and ran into it from the side, her negligence bars recovery.

Appeal from Civil District Court, Parish of Orleans; Porter Parker, Judge.

Action by Miss May McKernan against the New Orleans Railway & Light Company. From judgment for plaintiff, defendant appeals. Judgment annulled and reversed, and demands of plaintiff rejected.

Dart, Kernan & Dart, of New Orleans, for appellant.

Woodville & Woodville, of New Orleans, for appellee.

DAWKINS, J. Plaintiff claims the sum of $5,000 as damages for personal injuries alleged to have been received in a collision with a street car belonging to defendant company, caused by the negligence and fault of the defendant.

Defendant admits the collision, denies that plaintiff was injured to the extent claimed, denies negligence on its own part, and pleads the contributory negligence of the plaintiff.

There were two trials, before as many juries, in the court below; the first resulting in a verdict for $1,000, which was set aside by the judge a qua, and, on the second hearing, plaintiff was allowed the sum of $2,500. From a judgment on the latter verdict, the defendant has appealed.

At the time of the accident, plaintiff was employed by the Maison Blanch Department Store, in the city of New Orleans, and on the morning of December 17, 1915, started for her place of employment on one of defendant's cars, known as the Dauphine line. When the car on which plaintiff was traveling reached a point on Canal street just above, or on the woods side of, Burgundy street, she alighted therefrom and started across Canal towards the lower or north side, when she was knocked down and injured by one of defendant's cars, called the Louisiana Avenue line. There are four main street car tracks on Canal street, two on the upper or right-hand side of what is known as the "neutral ground," facing the river, on which cars run in the direction of the river only, and two on the left or lower side of said "neutral ground," on which cars run in the opposite direction, or away from the river. All cars running on the second or inner track on each side receive and discharge their passengers from the left or inner side, because of the close proximity of the outer tracks. In the business district on Canal street, all cars stop on the near side, or before crossing streets which intersect it.

There is some dispute as to which end of the car plaintiff got off of, but we think that the evidence reasonably shows that she was struck some 50 to 75 feet above the upper or woods side of Burgundy street. It was raining at the time, and she was using an umbrella. She had some 5 or 10 minutes in which to reach her place of employment, and was proceeding to a place called "Noah's Ark," on the lower side of Canal, situated about midway between Burgundy and ——— streets, for the purpose of informing those in charge that her brother, who worked there, would not report for duty on that day

144 LOUISIANA REPORTS

because of illness. She says she stopped on the first of the two lower tracks, for a few seconds, to permit a Claiborne car to pass, and at that time saw the Louisiana Avenue car, which subsequently struck her, standing on the opposite or river side of Burgundy street about the switch; that, immediately after the Claiborne car passed, she started across the track behind it, and was struck by the Louisiana Avenue car about midway between the two rails. Plaintiff says she thought, because of the distance the car was from her at the time she started across the track, she had plenty of time to pass; but on account of the excessive rate of speed at which it was running, and the failure of the motorman to ring the gong, it overtook her and injured her as she has charged.

We think it hardly worth while to indulge in any extended discussion of the evidence, although the issue is largely one of fact. Giving due weight to all of it, we think that the record reasonably discloses that plaintiff got off the car in which she had been riding and started toward the lower side of Canal in quite a hurry, both because it was raining, and because she had a message to deliver at "Noah's Ark" before going to her work, and did not take the time to go to the regular crossing; that, in holding her umbrella up to protect herself from the rain, she obstructed her vision, did not see the approaching street car, and ran into it. There is no dispute as to her having been picked up from the pavement by the inner side of the front end of the car about the step, and it is hardly probable that this would have been the case, if she had been in the middle of the track, at the time, nor would her injuries have been, in our opinion, as mild as they were. She evidently bumped into the car about where the fender connects with the body of the car, and was thrown down on her left side rather violently, and which probably accounts for the fractured ribs on that side. It does not seem reasonable that if she really looked, as she says she did, and saw the car as far away as she claims, it could have covered the distance necessary for it to travel in order to reach her in the short time required to make the two or three steps to the middle of the track.

We are of the opinion that the evidence convicts plaintiff of serious contributory negligence, extending to the moment of the collision and forming the proximate cause of the injury, which bars her recovery. If she had obeyed the familiar injunction of law and common prudence to "stop, look, and listen," we do not think the accident would have happened.

It is therefore ordered, adjudged, and decreed that the verdict and judgment appealed from be, and the same are hereby, annulled and reversed, and the demands of plaintiff rejected at her cost in both courts.